Rivera Guadalupe versus City of Harrisburg Good morning, your honors, it please the court Kimberly Boyer Cohn for the I would like to reserve three minutes for rebuttal. As a preliminary matter, the this court flagged the appeal for possible jurisdictional issues and dismissal with the panel like me to address that, please. The question posed here is the district courts denial of qualified immunity to Detective Pierce. And the courts have held that it's well established that the denial of qualified immunity is a textbook example of a collateral order that allows for immediate appeal of an otherwise interlocutory order. Yeah, well, but if the decision point if the if the decision hinges on rule 12 g, that's a while the district court did initially state that it was ruling on this issue on a procedural basis. The court went on in its opinion to substantively address it. And we'll get to that. I just want to make sure we've got some common ground. So leave that to the side for a moment. Would you agree that if Judge Rambo had said nothing else, except for 12g you're out, that was that'd be a procedural ruling and not a final order and therefore no jurisdiction in this court. I believe that is true, although I so the only way we would have jurisdiction is if what she said after she said what she did about 12 g constitutes an alternative holding instead of dicta. Is that right? Uh, yes, Your Honor. And in this case, it clearly did because she she fully analyzed it at this point. Um, if we went past that and did not, um, you know, look at it right now, um, Detective Pierce would not be able to go back and file another motion on it because she already ruled and basically she would come back as she did. Um, you know, so in in the first motion to dismiss, Detective Pierce did argue that, um, the malicious prosecution claim failed as a matter of law, and she ruled on on that issue. Um, the plaintiff then amended the complaint and Detective Pierce again raised the same issue. We're familiar with that history, but he could go back and file a 12 C motion or a summary judgment or summary judgment. And in that circumstance, I imagine you'd be right back before us, given the the, uh, language that followed the 12 G explanation for the denial. Um, but what? Perhaps that's simply formalistic. But why shouldn't we adhere to the rules and require counsel to adhere to the rules that way to go through those motions? Because, Your Honor, the rules also say, though, that, um, if the court, um, said, uh, implicitly denied the motion, regardless of whether they outright ruled on it or ruled on it for ruled on the motion for other reasons. If there was an implicit denial of qualified immunity, it still constitutes an immediately appealable rule. And in this case, she did implicitly deny it. I mean, theoretically, we could go back and raise it in a different type of motion. However, it's a outright question of law. And so nothing would change. And based on that, there's also it's not an implicit denial in the sense that that is the predicate for the 12 G ruling, right? In Oliver, where we were considering what was implicit, if a district court is going to allow discovery to go forward, implicit in that is that the pleadings are sufficient to allow discovery to go forward. So so that may be an implicit determination on the merits of qualified immunity, at least on the basis of the pleadings and therefore appealable. But how is it implicit in terms of the 12 G procedural ruling as opposed to what Judge Jordan suggested? Uh, that it's an Because your honor, it would allow for discovery to go forward when again, this is a pure question of law. And she specifically said that she wanted to streamline the process. So although she did find that it was technically a 12 G dismissal, she specifically said, I want to streamline this process. So I'm going to tell you exactly what I think. And that is that qualified immunity does not apply. In this case, nothing would change if we went back and all that would happen was one thing would change. You'd have to, you'd have to choose a procedural vehicle, which isn't forbidden by Rule 12. That's a pretty big deal, isn't it? I mean, uh, Rule 12 says you can't do what was done here. Uh, and what you're, it sounds like you're asking us to do is to say, well, for the sake of practicality and efficiency, let's not pay attention to what Rule 12 says because it streamlines it. Uh, if, if that's in effect what we're being asked to do, why isn't the answer to that? Well, we won't do it because Rule 12 tells us not to do it. And if you want to get your qualified immunity ruling in front of us, you have to use the proper procedural vehicle that's available to you. 12 C or 56, but not another 12 B six motion. Your Honor, it appears at this point though, that if, if we would go back and try to re-raise it, the court would basically do what she did. Again, there was an amended complaint, and I know you're, you're aware of the procedure, but, um, where we, we re-raised the issue of the failure to state a claim. And so even though there was an amended complaint with new allegations, instead of analyzing it again, the court said, you already raised this, I already ruled, I'm not addressing it again. So theoretically, because she applied her analysis of a purely legal question in this case, if we went back and raised it again, her response would be, I already ruled on this, I'm not raising it again. And then we would be precluded from appeal because she already ruled on it and we didn't appeal it. I followed you right up to the end. Why would you be precluded from appeal? She says, I already ruled on that. Then you've got a I really meant it. And then you've got a qualified immunity ruling, which you can bring to us as a collateral final order instead of as a 12, under a 12G cloud. If she specifically says, this is my final rule, but, but the way she did this was to set it up so that there's no argument we could make that she's going to address that she didn't already address. Is that to say in so many words that, in your view, the judge was treating the second motion as, or construing it as a 12C motion. And in denying it was effectively providing an alternative ruling, if she construed it as a 12G motion rather than another straight up motion? Your Honor, yes, it's very possible she did. The fact that she went on to address the full merits of this, again, to streamline the case shows that she wanted to deal with this at the moment and be rid of it because it is supposed to be addressed at the earliest possible opportunity to preclude the, you know, potential of going through discovery and all of that. Yeah, we understand that there's a lot to be said for judicial efficiency. So maybe there's going to be, you know, a discussion about formalism versus efficiency. But in the few moments that we've got left here, let's assume for the sake of argument that we thought we could look at this now that we had Why? Well, help us resolve what we recognize as a tension between Wright and Johnson. Why? Why isn't that a continuing problem that would say, well, it's not clearly established here? And therefore, yeah, help us understand your position on that. You've, I think you've, you've stated in some in perhaps the help us understand your position on why this isn't just clear as a bell and something that we ought to just be affirming her on. Because, Your Honor, there is a clear conflict between Wright and Johnson. They both hold the exact opposite thing. In Wright, you know, it was held that a plaintiff is precluded from proceeding with a malicious prosecution claim with respect to any charge brought against him if probable cause exists for at least one charge. Answer the Dennis point, the question from Dennis or that I get the author here. So what? Can't you rationalize Wright and Johnson by saying, look, Wright didn't address the problem of malicious prosecution with multiple charges, and that is how you resolve it and therefore done. That's not true, Your Honor, Wright didn't address it. Wright did involve multiple charges. In Wright, the plaintiff was charged with burglary, theft, and criminal trespass. And in addressing qualified immunity issue or the probable cause issue in that case, the court, the district court first denied qualified immunity because there was no qualified immunity. I mean, I'm sorry, my apologies. There was no probable cause for the burglary claim, but the district court didn't analyze probable cause for the criminal trespass claim. When the case came up on appeal, this court determined that the court was wrong by not looking at the other claims because there was probable cause for the criminal trespass claim. So this court said, even though there might not have been probable cause for the burglary claim, there was probable cause for the criminal trespass claim. And because the plaintiff faced her malicious prosecution claim on violations arising from the prosecution of all of the claims, since there was probable cause for her arrest and prosecution. And again, they said arrest and prosecution. So the district court in this case tried to distinguish Johnson by initially by saying that it was only a false arrest claim, but that was completely belied by the terminology that was used by the court in Wright. But it's used in Wright without any analysis whatsoever about malicious prosecution. And why isn't looking at the facts of that opinion, where it's dismissed before the preliminary hearing, why isn't it that just to say what is alleged is really only a false arrest claim? And so for the reasons that we've explained, the malicious prosecution claim is also out. Because, Your Honor, an officer can't be held liable for malicious prosecution if it is just based on a false arrest. There has to be more because a police officer generally does not initiate criminal proceedings, which is what's required for malicious prosecution. Exactly. So that may be exactly why it was thrown out. We can look back and try to figure out what was going on there. But when we look at Johnson, Johnson discusses Wright in depth and talks about it in terms that distinguish it. You're asking us to conclude that this tension is irreconcilable. But why haven't we already crossed that bridge with Johnson so explicitly distinguishing Wright? And then since then, we've got Dempsey, but also more recently, the Harvard case, where again, we, the Court of Appeals, have embraced the idea that Johnson controls in the malicious prosecution context. May I address your question since my time is up? First, to go back to the fact that you said that there was no analysis done in Wright. This court in adjudicating the issue in a single paragraph with no citation does not diminish the precedential status of the case. And in fact, acknowledge that Wright was still good and well as valid precedent, which is completely in keeping with the fact that a precedential opinion cannot be overturned absent an en banc decision by the court. So the panel could not have... Johnson then went on to do what it did. So clearly, the Johnson court thought that there was a way to rationalize what it was doing, and didn't it rationalize it in just the way Judge Krause has described? So the facts in Johnson are very different. And in that case, it's because what happened was there was an altercation at a parole agency. And the defendant in that case, Noor, was an agent of the parole board. The defendant was in the office, and it became physical, and he was subsequently arrested. At that point, he was not arrested by Mr. Noor. But after he was arrested, Mr. Noor then went to the police and gave them a version of what happened, which was completely false, and convinced them to basically charge him with a laundry list of crimes. And the argument here is that the police officer effectively did the same thing, that Officer Pierce, either overtly or by hiding information, ended up prompting the prosecution. So why isn't that just like Johnson? Because, Your Honor, that is not what the actual allegations are here. In this case, the plaintiff's own allegations admit that Detective Pierce arrested and charged him with all of the crimes on the same day. This isn't a case where he arrested him, went to the prosecutor, and then later arranged for different charges to be brought. The allegations are he arrested him, he charged him. In his affidavit for the search warrant, the plaintiff admits that he acknowledged exactly what the plaintiff claims is true, is that it was a black man who shot Val Kossak, described the black man as described by the witnesses. So there is actually, the plaintiff's own allegations show that there wasn't any subsequent, or there wasn't any fabrication of the claims. There wasn't any later communication. The only thing that the plaintiff was arrested is that he was called to act as a witness, which is going to happen in any case where a detective is involved. And to finally answer Judge Krause's other question about whether Johnson has been continued to be good law, the fact is that the courts have continued to also follow right. This court in 2020, in Simonson v. Borough of Taylor, said that they didn't need to analyze the remaining offenses for all of the crimes because they were simultaneously charged and arose from the same incident. So in that case, this court essentially applied right, not Johnson. Again, in 2016, the Eastern District in Lapan... We got you. We're well past your time. Any questions? Just one, to try to tease apart something that I'm not sure is in your brief or not, but to the extent that you are suggesting that Pierce here did not commit a violation because in terms of initiating a prosecution, that would have to be done by the prosecutor. Is that to say that in the case that we have established, we should be looking at not only the question of probable cause in malicious prosecution versus false arrest, but also whether we have clearly established law on what constitutes the initiation of a prosecution when we're talking about liability of an officer? Well, Your Honor, we didn't address that in this appeal because that goes more towards the whether or not the malicious prosecution claim could continue as a matter of law based on what is alleged in the complaint versus qualified immunity. In this case, the qualified immunity argument is mostly based on the fact that it wasn't clearly established law. We did argue qualified immunity, whether there's a violation or not. Yes, and that was argued below. The district court did find that Pierce did initiate the proceedings based on the allegations of the complaint. And again, we did argue in our brief that that was not true and he did not analyze the... He did not actually initiate the prosecution because all of the bases upon which the district court found that he had were actually incorrect based on the actual allegations of the complaint. So we did argue in our brief that both prongs were negative and should be answered in the negative and that the district court was incorrect. And we did argue that he did not initiate the prosecution in this case as well. Okay, thank you. All right. Thank you, Ms. Blair-Cohen. We'll hear from your colleague. Good morning, and may it please the court. Good morning, Your Honors. My name is Leticia Chavez-Farid, and I represent the appellee Jorge Rivera Guadalupe. Jorge spent 538 days in Dauphin County Prison for a crime he took no part in. The issue, succinctly, is whether as a matter of law, an investigator who violates a clearly established constitutional right when he has probable cause to arrest a man for one crime, yet nonetheless recommends multiple groundless charges be brought against him. Okay, before we get to the substantive question that you've just outlined, why don't you speak to the jurisdictional problem? Sure. Judge Rambo dismissed the affirmative defense of qualified immunity on two grounds. First, procedurally, because Pierce did not follow the consolidation rule in his 12B6 motion. Then she went on later to go into qualified immunity substantively and again disqualified or refused the affirmative defense of qualified immunity. Why wasn't that whole discussion dicta? After she said, I'm dismissing this case on procedural grounds, citing 12G2. I think that she wanted to streamline it, possibly. I understand what she wanted to do, but why isn't it dicta? It may very well be dicta. If it is dicta, then what do we need to do? We need to send it back down to the court, the district court. If we do that, what happens next? What's going to happen next is they're going to re-raise it in another vehicle or at summary judgment or prior to trial, and we'll be right back here before these judges, before you judges. As a matter of policy, as a matter of law, yeah, what's the right thing for us to do? I think that you have to decide whether or not as a matter of law, whether or not, excuse me, Mr. Pierce is entitled to qualified immunity or not. Can we do that without viewing the district court's, the second part of the district court's opinion as an alternative holding, wherein the district court is considering the motion as a 12C motion? I think, I think, I don't think that you can. So we'd have, we'd have to take that position. Correct. In terms of interpreting the opinion for it to be compliant with, with the rules. Correct. We'll, we'll get to the qualified immunity question. It's either now or six months from now, right? Right. I think that we should probably do it now. But can we? I know, I know it's tempting to, but can we? I think that some of the circuits or some of the, some of the cases that I've looked at, at least in the Eastern District, there was one case where the defendants answered late to a complaint regarding qualified immunity and the judge allowed it and dismissed that, dismissed the case based on qualified immunity, even though they were late in answering the complaint. But that's the closest case that I've seen where a, where an attorney has left out qualified immunity as a defense. Okay. Well, let's assume for, again, for the sake of discussion that we thought we could decide the matter now. And who knows, maybe we're just making, taking argument now for what happens six months from now. But turning to the merits, am I correct that neither your client nor Detective Pierce contested the framing of the issue that the district court announced? That is, the district court said, if I've got the record right, the relevant inquiry was whether, as a matter of law, an investigator violates a clearly established constitutional right when he has probable cause to arrest a man for one crime, yet nonetheless recommends multiple groundless charges be brought against him. We accept that. Okay. And am I correct that both sides, neither side contested that framing of the issue? Neither side did. Okay. And if that is the framing of the issue, that is the framing of the inquiry, how do you deal with right? Well, in the right case, a woman, we know the facts of rights, I'm going to spare you as much as I can. She goes to the police after having broken into a home in order to retrieve her clothing after a sexual assault and some items, or so she says, in order to later determine who these people are. When she's, so she admits essentially to trespassing and some of the items that she took were actually generic in nature and quite expensive and really had no bearing on being able to find the identity of these people later. So by the time she gets to the preliminary hearing, the case is dismissed against her. And so whether or not the attorney who drafted that complaint wants to call it false arrest or malicious prosecution, it was determined that it was a false arrest case. And this court. How is it? How is it that we can look at right? That's a false arrest case. It's not a malicious prosecution. Because it didn't go on into the proceedings of prosecution. It didn't go forward in court. You didn't have somebody lingering in a jail for 538 days with a million dollar bail and continuing on, which is more, when we look at Costler, what's talked about is that under arrest, people will generally be treated the same way until they get to the preliminary hearing. And so. Yeah, but Costler, Costler, Sarah and VanCase, and don't we just say right in there, hey, there's tension here in this case law. Hard to, hard to reconcile. And if that, if that is what we say, does that mean that the law is less clearly established or not? No. Um, the Costler court also goes on to state that Wright and Johnson are not properly before it. Um, and it really goes on to. That's true. But we said what we said, said, despite our clear statement in Johnson, that the presidential status of Wright is not diminished. We recognize that the holdings of these two cases are difficult to reconcile. And didn't we also say, and because Wright came first, it controls. Um, didn't we also say on Bonk and Costler, because Wright came first, it controls and footnote, uh, I think it's five. I don't think that, uh, Johnson was, I'm sorry, footnote eight. I mean, I think that Wright, Wright and Johnson are both good law. I don't think that they both go to malicious prosecution. I think Wright really goes to, um, false arrest where Johnson goes to malicious prosecution. And in the Costler case, you never get anywhere because one of the elements for malicious prosecution, um, having the outcome be favorable to the plaintiff was never even met. Say, say we agree with you that, that, um, it is, uh, clearly established and that we, uh, accept the kind of distinction that the Johnson court was making, um, which would make our decisions in Dempsey and Harvard consistent with that treatment of a malicious prosecution claim where it really is pleaded as a malicious prosecution claim. And we look at Wright and say what was pleaded there. When we think about what constitutes the initiation of prosecution, where, where, where there is, uh, some kind of, uh, actual, um, influence, uh, on, on the, the filing of legal process, there, there, that it's that circumstance where an officer is, uh, has potential liability for, for malicious prosecution. And then Wright, nothing was pleaded about that, right? So, so the, the chain of causation has been broken because a prosecutor would be the one to make that independent determination. There's no allegation of a misrepresentation that the prosecutor relied upon, uh, um, or, uh, a material omission. Why isn't this case then on all fours with Wright? This case is not on all points with, with Wright. Are you talking about Jorge Rivera Guadalupe right now? I'm sorry. Yes. Okay. Where, where the, the ex, the supposed exculpatory information that you've identified, uh, in terms of, um, that the shooter was an African American male, uh, that, that was information that was before the prosecutor. The prosecutor had that and made the determination based on the full record to go forward. Why, why doesn't that break the chain of causation in the same way as Wright? So that what we're looking at here, we shouldn't even think of as a, uh, truly pleading a malicious prosecution case. Um, but on the same, for the same reason that we would dismiss it for false arrest as in Wright, we would say the, the, the, uh, supposed malicious prosecution, uh, claim being made here fails for the same reason. Um, well, even in the arrest report that Detective Pierce writes himself, which is four pages long, he says that he's been in consult with, uh, the who told him to go and talk to Jorge, not to arrest him, but go and talk to him. This is, uh, this is before the actual prosecution of Jorge. Then five days after the shooting or four days after the shooting, Mr. Rivera is, Rivera Guadalupe is at his parole officer's office and the parole officer calls the police and he goes there and he states on the stand at the preliminary hearing that Jorge refused to be recorded. He Miranda, Mirandized him. And then, um, based on some discussion, decided to charge him with all of these charges. Is there anything false there? What do you mean? Was that, was it, was any of that testimony false testimony? No, that's what he did. He initiated the charges prior to it ever going to the district attorney that meets the first element of a prosecutor, I'm sorry, of malicious prosecution. Well, that's, he said this well into action. Ms. Chavez-Freed, we're trying to, we're trying to get you to focus on the, this, this specific point that how do you distinguish, how do you distinguish right? Judge Krause has put it before you that, uh, and, and it's in Ms. Cohen's argument that the information was in front of the prosecutor. It's not like, it's not like, uh, Detective Pierce said, and now it was the small Hispanic guy who shot him. They told him this is what the evidence is. And then, and then the prosecutor chooses to go forward with the charges. Why doesn't that make this case, uh, something where you would say, okay, uh, the, the detective has not lied to get this prosecution going. So it's not on the detective. It's on the prosecutor. I take, I take that to be the import of the question that Judge Krause has put you in and you, you launched into some facts, which are not, not unimportant, but don't seem to answer the question. Why doesn't the fact that Detective Pierce told the prosecutors what was said, uh, in the, um, probable cause affidavit and those things, why doesn't that say, okay, if there's a problem here, it's the prosecutor's problem, not the detective's problem. Right. So I think it's different than what, right. And the fact that it, it, you know, the, the charges are dismissed by the time they get to the preliminary hearing. And also in right, these are statements from the person against basically her own interest. She's saying, yeah, I committed this trespass. And look at these things that I got in order to identify. We don't have that here. Um, you know, in order to find malice in, um, malicious, uh, prosecution, we can look at many things. Um, the fact that he just continued on with it when we, I think that the first step is that he initiated the charges, which he openly admits to in that court. And then, and so, you know, the, the district attorney did not pull Jorge Rivera's name out of a hat who, who is nothing like what was described by multiple people. Five foot eight black man in his twenties. Jorge Rivera is like five feet tall. He's very light looks and he can't run. He's got permanent limp. You don't have to persuade us that, that prosecuting Mr. Rivera for the crime here seems exceedingly odd. That's not the, that's not what we're wrestling with. I think that the step explain, you've been saying that he initiated the charges. What, what, what do you mean? He initiated the charges by doing a site arrest by doing the site arrest. He had to arrest him for something. And he, I mean, he didn't have to arrest him. He arrested, he had to arrest him for something. And the days leading up to this arrest, testimony after testimony from David chapel, who was there, who actually witnessed the shooting says who the person is, I understand that, but it isn't, isn't doing the site arrest. That that's not the initiation of legal process, right? That, I mean, that might be the basis for false arrest claim, but after a site arrest would then come a complaint, right? Yes. And isn't it the filing of the complaint that is the initiation of the criminal prosecution? Correct. But it's based on the information given by the police officer. The complaint is that decision to file the complaint is made by a prosecutor, right? Yes. With the information from the officer. Well, here where we have the prosecutor making that decision with information from the officer and also all of the information that you say that the officer, uh, not, not, uh, you know, falsely, there's no false representation. Uh, but if the officer didn't himself, you highlight the testimony of other witnesses, nonetheless, the prosecutor had that information, right? Correct. I mean, had, had the information that, that, uh, Val Valka sack had repeatedly testified that the attacker was an African-American male, uh, and, uh, and even that, that, um, the witness down the hall, uh, had, had corroborated that. And the prosecutor made the decision to file the complaint. So, so again, why shouldn't we think about this, uh, on all fours with right, where there is a break in the causation between whatever the, the officer, uh, what was, uh, putting in his report or testifying about and the prosecutor making their own decision with all of the information, uh, that was available. So when, when he states that it was a black male, that's actually in a war, a warrant in order to search Jorge Rivera's room where the shooting took place. We don't know specifically what was given to the district attorney from Pierce. We know that there's the police, uh, report, and we know that he does a warrant for a search of the premises and we, but we don't, but how is that relevant? The legal process begins with the filing of the complaint in, at least in the, in Dauphin County, right? Hmm.  Okay. It is settled law that officers who conceal and misrepresent material facts to the district attorney are not insulated from a section 1983 claim for malicious prosecution simply because the prosecutor grand jury trial court and appellate court all act independently to facilitate erroneous convictions. If the officers influenced or participated in the decision to institute criminal proceedings, they can be held liable for malicious prosecution and that's Halsey versus Pfeiffer, which is third circuit decision. In 2014, the premise there is that the, uh, the, there's an independent duty on the part of the prosecutor, but that the prosecutor is relying on in some way on that information. Clear. You've said that there was information missing, but the prosecutor has that information. Again, I would go to the last sentence of that. Um, your honor, if the officers influenced or participated in the district attorney did not, or Michael Sproul himself, attorney Sproul did not pick Jorge Rivera's name out of a hat. Uh, you know, I mean, Jacob Pierce was the lead investigator. He had a lot of facts and he went to the district attorney, even before he ever picks up Jorge Rivera, he's in consultation, there is the influence of an officer or Pierce himself really set this ball in motion. Well, there's no question about that. I don't think you'll get an argument, uh, from the other side. Uh, and you won't get questions from us, uh, uh, on the point that the arrest sets the ball in motion. So I think we've got your, uh, argument on this, unless you have some further follow-up. Um, just, uh, if we are to take the, uh, uh, right. If we think that this is the true malicious prosecution claim is pleaded, uh, then we are to look not only at our own case law, um, when we're trying to see if there's been a consensus, uh, among the courts, we can also look at district court decisions. We can look at other courts of appeals and, you know, even apart from our own, uh, observation, uh, uh, even if we, uh, treat it as a victim in, uh, Kessler, we, we have district courts, even since Dempsey district courts within our circuit, some following Wright, some following Johnson, and we have courts of appeals that have taken different viewpoints. The 10th circuit, even misstating our law in its own review of it and trying to understand what we've held, uh, and, and the 10th circuit making the determination that as a matter of what's clearly established law, that with this picture in front of it, you can't say clearly established. Why shouldn't we say the same given the confusion that we're having with district courts? I think that, again, I would go back to the fact that Wright is really a false arrest framework. And in Kessler, this court talks about, you know, different, two different frameworks, detention. That's right. There are two different frameworks for two different sets of facts. One is malicious prosecution, which would be Johnson and Wright would be, um, the false arrest case. I mean, here plaintiff has alleged that detective Pierce contributed to the by advising the district's office to bring charges based on insufficient facts. This satisfies the initiation element of malicious prosecution under both the federal and the Pennsylvania law. Um, I don't, if, if this court were to say that Wright is controlling, then I would wonder if this court had decided Johnson incorrectly, even if we don't say that Wright is controlling, what, why can't we nonetheless acknowledge that, uh, there's, there's confusion about when Wright applies versus when Johnson applies and say they're not irreconcilable, but there's still confusion about it. Wouldn't that make it not clearly established? No, I don't think that there is confusion. I really don't. I think that it's complex, but so is the bankruptcy code. And so is the tax code. And so is the rule against perpetuities, but it doesn't make it not well settled law. I think that it's complex, but it's not, um, it's not, you know, not settled. It's been used many times. I do have another question. Sorry. It's a little more fundamental. If you look at the section in Johnson, on page 84, where we distinguished Wright, we made a distinction between a simultaneous rest on multiple charges where, because there was probable cause for one of the charges, the person's going to be detained no matter what. Distinguish that from another case where, um, the additional charges that are added for which probable cause is absent, we said almost surely we'll place an additional burden on the defendant. I think meaning he's going to be detained longer because of these additional charges lacking probable cause. What is the fourth amendment harm? Is it the detention associated with being charged without probable cause, or is it the charge itself without probable cause, even if it doesn't affect the length of one's detention? I think it's the liberty interest that the detention itself, I mean, being uprooted from one's life. And is there, is there evidence in this case that the charges that lacked probable cause, um, extended your client's detention? Absolutely. Attempted murder, as far as pulling out a gun and shooting somebody, he had a million dollar bail. For someone like Mr. Rivera Guadalupe, you might as well said a $10 billion bail. It was, it was that severe. Um, and so, you know, had it been theft or unlawful taking or the other charges or marijuana, which was found in his room, any of those things, those are very small. They're not million dollar bails, et cetera. Thank you. Thank you very much. Michelle, there's three, um, and you're, you're about to close. Thank you, your honors. Um, first I just want to point out that, um, contrary to the plaintiff's assertion that rate is distinguishable because the charges were dismissed before getting to the preliminary hearing. That's not actually what happened. Um, there was a preliminary hearing in right. However, the property owner who was pressing these charges did not show up at the preliminary hearing and that's when the charges were dismissed. So it did actually get to court proceedings. It's just that the complaining party, um, did not show up to testify. Um, how did Johnson distinguish right? Um, well, as judge Porter just pointed out, he just, they distinguished it, um, based on simultaneous arrest on multiple charges, which is what happened here. Um, versus, um, you know, where additional charges were added at a later date, which did not happen. Um, there's also no allegation, um, in the complaint at all, that there was an additional burden placed on the plaintiff, um, based on these. He was fairly inferable. Aren't we supposed to draw every fair inference we can from the complaint? Well, one of the charges brought for which it's, are we supposed to drive every fair inference we can from the complaint? Yes. Isn't it a fair inference that you don't get a million dollar bail for a marijuana charge? There's no allegation in the complaint that there was a million dollar bail. That is completely lacking. We don't know what the bail is based on the allegations. Um, and in this case, the plaintiff was a convicted felon and one of the charges brought was possession of a firearm. So theoretically, there could have been a high bail for having someone convicted of aggravated assault who later possessed a firearm. So if we, if we thought, well, we don't have jurisdiction here. It's got to go back. And then there were, uh, a later, uh, uh, there was a later motion made by you, presumably. Uh, I'm just kind of thinking out loud here. You help me out. You bring a 12C motion. They say your honor, this ought to be a rule 56 motion. Uh, will, will that information about the bail get in front of this court at some point? Um, it may your honor, based on the, the, the procedural posture of the case, there also may be, um, additional facts as to what charges, um, Mr. Uh, the plaintiff was actually arrested on versus what the charges were later changed to by the prosecutor. Um, there's a whole host of information that may not have come out yet. Um, and I would just like to make one more point. I assume you agree with your friend that the fourth amendment issue isn't merely being charged for something without probable cause. It's the additional detention that results as a, because of that. That's the fourth amendment harm, the detention, not just being charged. Correct. That's what, that's part of what distinguishes it from false arrest and malicious prosecution is the additional, um, because false arrest ends at the time of arrest and malicious prosecution continues. But again, there's no allegations in this complaint as to bail or anything. Um, and I, I, if I can just address one point that judge Krauss had made about the confusion as to when Johnson and Wright would each apply, which makes it, um, not clearly established. Um, that is basically what the, uh, Supreme Court acknowledged in Mullinex when it said specific specificity is especially important in the fourth amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrines will apply to the factual situation the officer faces, couldn't, couldn't, uh, any reasonable officer have known that if I'm being told by every witness to this event, that a tall black man shot sky, that it's not just wrong, but outrageous to charge the, uh, the victim's best friend, who is a short Hispanic man with the assault and the attempted murder wouldn't, wouldn't just any human being look at that and go, yeah, that's crazy. Well, your honor, one of the, one of the charges was actually conspiracy. Let's just stick with me. Detective Pierce arrested him for the shooting and attempted murder, right? Well, that, that, that's what the plaintiff alleges. Okay. And we're taking it as true, which we have to right now. Yeah. We're taking it as true. Wouldn't you say it's pretty clearly established that if everybody who was a and then the officer arrests him and charges him with it, that's pretty clearly established. You can't do that. It's, it's fundamentally and obviously sort of playground sense of fairness. Wrong. Right. Your honor, we don't, it's based on their work. There was probable cause for some of these charges. There's no dispute of that. And again, it comes down to the conflict between Johnson, because for false arrest, you don't have to have. Your position has to be Detective Pierce's behavior here was absolutely indefensible, but Wright gives him an out because Wright says, yeah, there was a knife and there was some marijuana. So he could have charged him with possession and deployment of chemical weapons of mass destruction. And it's okay. There was also a legal position that's being pressed on us, right? No, your honor. The law is clear. If this was just a false arrest claim law is clear that there would be no liability on behalf of Detective Pierce, because the law is very clear that probable cause as to one charge for false arrest is sufficient and it doesn't matter what else you charge anybody with. Again, Wright and Johnson look to malicious prosecution, which has to go past the arrest. And again, we don't have that here. We also have Velkosek, who told the detective that the plaintiff grabbed the gun and chased the people. It comes down to the assertion that there's a break in the causal chain because the prosecutor is the one who's responsible. And it really doesn't matter that Detective Pierce did something which you can't say is outrageous. But I think people just generally looking at it would say, everybody's telling you it's not him and you're charging him, would say, yeah, that's at the very least something that people would look at and say, that's wrong. Okay, your position is none of that matters. And he stays in jail for, what, 15 months, something like that. He stays in jail in excess of a year. And because the prosecutor pursued what the detective charged, the detective walks away without any responsibility. That's the legal, that's where we end up as a matter of law. Based on the law and based on the plaintiff's allegations, that is the situation here. The prosecutor had the discretion with the information in front of him, and the prosecutor is the one that continued to bring these charges. And the prosecutor is not, in this case, based on absolute immunity. So we're left with Detective Pierce. Could you clarify for us, just as a matter of procedure in Dauphin County, what is the on-site arrest, what happens next, and when is the presentment and bail set? Well, Your Honor, I'm not fully versed in criminal proceedings in Dauphin County. I will say, the plaintiff was not arrested on the day of the shooting. The plaintiff was not arrested until after Detective Pierce obtained a search warrant, searched the premises, and then on the same day that the premises was searched, the plaintiff was arrested and charged with the various crimes. So there was a probable cause search warrant presented, and then he was charged. I know that there was later a preliminary hearing, and then after that, there was a charge brought by the prosecutor. And when is, out of curiosity, when is bail set in that sequence? I'm sorry, I'm not sure, Your Honor. And just one other clarification, we don't have, there's nothing in a record at this point in terms of the affidavit of probable cause or the complaint itself, is that right? Well, with regard to, yes, I think the only allegations in the complaint were as to the search warrant where it was specified that it was a African-American man and the full description was put in there as the plaintiff alleges the perpetrator was described. So there was no hiding or attempting to claim it was the plaintiff in the search warrant. You're saying there's no separate affidavit of probable cause outside of the search warrant? I don't, there's no allegations in the complaint regarding that. So we don't have before us, the district court didn't have in making whatever it was doing in the second part of its opinion, it didn't have either an affidavit of probable cause or the criminal complaint before it. Correct, Your Honor. It was solely based on allegations involving the search warrant and then the fact that the plaintiff was arrested and charged. And then there was allegations that Pierce was called by the Commonwealth as a witness at the preliminary hearing, which again is, I'm sure, standard for a detective, but there's absolutely no allegations as to the substance of his testimony. And there's no indication that that testimony was false. Thank you. Thank you. Thanks very much, counsel. We'll reflect the matter under advisement on recess court.